**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FT MYERS DIVISION**

In Re:

**R. DON THROGMARTIN**   Case No. 9:09−bk−28555−BSS
                         CHAPTER 7

    Debtor.

_____/

**RESPONSE BY SUZANNE THROGMARTIN TO THE TRUSTEE'S MOTION TO DETERMINE THAT CLAIM 2-1 IS A DOMESTIC SUPPORT OBLIGATION**

Creditor, Suzanne Throgmartin ("Suzanne" or "Claimant"), through undersigned counsel, responds to the Trustee's Motion to Determine that Claim No. 2-1 of Suzanne Throgmartin is a Domestic Support Obligation [Doc #99] (the "Motion"). This response also addresses the response filed by creditor W. Gerald Throgmartin ("Gerald") to the Motion [Doc #103]. Suzanne supports the Motion, and states the following:

**Background Facts Not in Dispute**

1. On January 23, 1998, the Debtor, as the spouse of Suzanne, filed his Verified Petition for Dissolution of Marriage.

2. Subsequent to the filing, Debtor and Suzanne entered into a marital settlement agreement titled "Joint Property Settlement Agreement" (hereinafter, the "DSO"). See Exhibit attached to Claim 2-1.

3. Pursuant to Suzanne's and the Debtor's DSO, Suzanne is the owner of a judgment against Debtor, in the amount of $7,490,000.00. This judgment was to be paid to Suzanne in monthly installments of $31,000.00 for the greater of 20 years or the rest of her life. *It is important to note that, per the terms of the DSO, Suzanne would <u>always</u> be receiving a*

1

*payment from the Debtor for the remainder of her life, regardless of how long she lived and regardless of the actual balance of the judgment.*

4. At the time of the divorce, the Debtor held valuable interests in the HH Gregg retail chain and owned millions of dollars of real estate. He was a sophisticated business man with a sizable income and who possessed a skillset and background to enable him to continue to earn a substantial income in the business world.[1] Suzanne, his wife of 37 years, in contrast was primarily a homemaker with no significant earnings potential.

5. On January 1, 2009, the Debtor began failing to make full payments to Suzanne in violation of the DSO.

6. On December 16, 2009, the Debtor filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code. At that time, the Debtor was behind on his payments by more than $300,000. Since filing, he still has failed to tender any additional payments to Suzanne. The remaining non-accelerated balance on the judgment is approximately $3,000,000.

7. Suzanne is presently residing in Indiana and has been declared to be incapacitated, and is presently subject to a guardianship. Given her age and condition, she will likely never be in a position to support herself.

**Standing**

8. Suzanne reiterates and supports the conclusions of the Trustee that the Debtor lacks standing to object to a claim when there is no conceivable chance that the estate will produce a surplus. <u>See</u> Trustee's "Motion to Strike" at Doc #95, in response to the Debtor's objection at Doc #79. The Trustee's position is well founded.

---

[1] The Debtor's business dealings are described more thoroughly in the Trustee's adversary complaint pending against Gerald, and detail a series of complex business transactions involving many millions of dollars in assets and liabilities. Robert E. Tardif Jr. v. W. Gerald Throgmartin, 9:11-ap-01140-BSS, now pending before this Court.

## Applicable Law

9. Gerald, the Debtor's brother and long-time business partner,[2] argues in his response at Paragraph 8 that Indiana law is the applicable law that applies to the question of categorizing a claim as either a domestic support obligation or a property settlement. This is flat wrong. The classification of a debt as either a domestic support obligation or property settlement is entirely a matter of federal bankruptcy law.

10. Judge Paskay examined this question in detail in the context of a Chapter 7 case, and concluded that "The issue of whether a particular debt is 'alimony, maintenance or support' or a 'property settlement' is a question of federal law and not state law." In re Mader, 228 B.R. 787, 790 (Bankr. M.D. Fla. 1998) citing In re Tatge, 21,2 B.R. 604 (8th Cir. BAP 1997); citing In re Williams, 70,3 F.2d 1055 (8th Cir.1983); see also In re Campbell, 74 B.R. 805, 809 (Bankr. M.D. Fla. 1987) ("The question of what constitutes alimony or support is to be determined according to federal law.") citing H.R.Rep. No. 595, 95th Cong., 1st Sess. 2 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 77-79 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787; In re Arosemena, 6,3 B.R. 55 (Bankr.M.D.Fla.1986); In re Pody, 4,2 B.R. 570 (Bankr.N.D.Ala.1984); In re Story, 3,6 B.R. 546 (Bankr. M.D. Fla. 1983).

## Legal Standard

11. There is an abundance of case law on the classification of a marital debt as either a domestic support obligation or a property settlement. In a Chapter 7 case, the classification is extremely important because it will determine whether the marital claim is given non-dischargeable priority status or dischargeable general unsecured status. 11

---

[2] The Trustee also is pursuing claims against Gerald in relation to his dealings with the Debtor, and it is relevant to note that the Debtor engaged in certain business dealings with Gerald that ultimately led to Suzanne being deprived of a lien to secure her DSO judgment.

3

U.S.C. 523(a)(5). In the instant matter before the Court, this classification will not only affect the dividend paid to the various claimants, but it would also determine whether Suzanne can pursue collection on the approximately $3,000,000 that she is still owed from her ex-husband. Needless to say, the implications for Suzanne are huge.

12. The Court should look beyond the labels applied to a marital settlement agreement and look to the substance of the agreement to determine the appropriate classification. The mere fact that the parties to a marital agreement label the agreement as a "property settlement agreement" is not conclusive on the classification of the claim type. See In re Sampson, 997 F.2d 717, 721 (10th Cir. 1993); In re Yeates, 80,7 F.2d 874 (10th Cir.1986); In re Woods, 56,1 F.2d 27 (7th Cir.1977); In re Campbell, 74 B.R. 805, 809 (Bankr. M.D. Fla. 1987) ("It is not determinative that an award is entitled 'property settlement' because the Court will look to the substance of the 'Agreement' and will disregard labels. This Court must ascertain the parties as well as the divorce court's intent in determining whether an obligation created in a divorce decree is dischargeable in bankruptcy."); See also In re Usher, 44,2 F.Supp. 866 (N.D.Ga. 1977).

13. The relevant factors to examine on the question of classification were spelled out in detail by the 11th Circuit in Cummings v. Cummings, 244 F.3d 1263, 1265-66 (11th Cir. 2001). That Court identified the following seven factors as determinative of the intent of the parties in favor of a property distribution rather than a domestic support obligation:

   1) the obligation is not subject to death or remarriage;

   2) it is payable in lump sum(s) rather than installments;

   3) it is non-modifiable;

   4) it is not enforceable through contempt proceedings;

    5) the divorce court derived it by equally dividing the assets and liabilities of the couple;

    6) the minor children were separately awarded support; and

    7) the divorce court separately awarded rehabilitative alimony.

14. In the Middle District of Florida, Judge Baynes analyzed the question by looking to twelve factors in In re Johnson, 156 B.R. 338, 340-41 (Bankr. M.D. Fla.1989):

    1) The express terms of the judgment of dissolution;

    2) The relative incomes of the parties at the time of the judgment of dissolution (disparate income favoring a classification as a domestic support obligation);

    3) The length of the marriage (longer marriages favoring DSOs);

    4) The number and age of children (larger, younger families favoring DSOs);

    5) The amount of child support (the absence of separate child support favoring DSOs);

    6) Whether the obligation terminates upon death or remarriage of either party (termination favoring DSOs);

    7) Whether the obligation is payable in installments over an extended period of time (installments and longer payment terms favoring DSOs);

    8) The level of education of the parties (disparate educational levels favoring DSOs);

    9) The health of the parties (disparate health conditions favoring DSOs);

    10) The probable need for support (need indicative of DSOs);

    11) The property brought to the marriage by either party; and

    12) Whether the payments are intended as economic security (security favoring DSOs).

**Argument**

15. In this instance, the parties chose to identify the marital settlement agreement as a "Joint Property Settlement Agreement" but the substantive provisions show that this agreement was intended to provide support to Suzanne well beyond a mere distribution of assets. The fact that there was no separate alimony award is strongly indicative of this conclusion.

16. A common theme emerges from the comparison of the <u>Cummings</u> and <u>Johnson</u> standards:  A liability to a former spouse will be classified as a domestic support obligation when the payment obligation lasts for a lifetime, there is an imbalance of income, and payments are made in installments. This is particularly true when there is no separate, specific award of alimony and the marriage was lengthy.

17. Applying this law to the known, uncontested facts, the obligation owing from the Debtor to Suzanne is unmistakably a domestic support obligation. The parties were married for 37 years. There were no minor children at the time of dissolution. There was an enormous imbalance of income and earning potential between the Debtor and his former spouse. The payments are made in installment payments over an extended period of time directly to the ex-spouse. The payments to Suzanne continue for her entire life, even if she lives beyond the 20 year repayment schedule, thus ensuring she would never be deprived of income while she lived. There was no separate award of alimony. These payments represent the vast majority of the income of the Claimant, and are necessary for her economic security.

18. If the Debtor intended this DSO to be a mere property settlement agreement, then why did he agree to structure the payments as an annuity for the life of Suzanne, regardless of

how long she lived? If the true intent of the parties was merely to pay a fixed sum to Suzanne over 20 years, then the provision within paragraph 7(c)(i) which extended the monthly payments "for her lifetime" would be pointless. The unambiguous intent of this provision was to guarantee that Suzanne would be provided "support" for the rest of her life.

19. Accordingly, claim 2-1 is properly classified as a non-dischargeable priority domestic support obligation.

## Rebuttal

20. Gerald makes five points to support his contention that the DSO should be classified as a property settlement. He first argues that the provisions within the DSO that create the debt to Suzanne are found within the sections of the DSO that deal with the distribution of property, and that is somehow significant. On the contrary, it does not appear that the 11th Circuit gives this consideration any weight, which is logical since there is no "section" within the DSO that specifically addresses alimony payments, so there is no other place for these payment provisions to go. Gerald's argument, therefore, is merely a reiteration of the fact that the parties structured the support payments to Suzanne through a judgment lien and a monthly payment obligation.

21. Gerald's second argument is that the DSO referred to the payment arrangements as a property settlement and never used the terms "alimony" and "support." As noted above, Court will look beyond the labels and look to the substance when evaluating these marital debts. Labeling a marital debt as a "property settlement" is no more significant than putting the term "non-adhesion" on the front page of a contract – the addition of the label does not define the agreement, but rather the substance of the terms themselves.

22. Gerald's third argument is that the DSO does not terminate upon death, and continues for 20 years regardless of Suzanne's earlier death. Here, Gerald only argues half the fact, and misses the point that the payment obligations continue for life regardless of how long Suzanne lives. As stated above, the relevant take-away from this provision is that Suzanne is provided payments for life, even if she should live 40 more years, and the nominal judgment balance is disregarded when determining the payments to Suzanne beyond 20 years.

23. Gerald next argues that the tax treatment of the DSO is a factor. The 11th Circuit did not give any weight to this issue, however, and therefore it is of marginal relevance. However, to the extent the tax treatment is relevant, the Court should note that Paragraph 7(c)(1) of the DSO contains a "netting" provision that *increases* the payments to Suzanne to cover the tax liabilities after 20 years – further bolstering the argument that the monthly payments are intended to provide a steady source of support to the Debtor's ex-spouse (just like alimony), and further diminishing the practical significance of the stated judgment amount. In essence, the actual balance owed on the judgment is irrelevant should Suzanne live more than 20 years.

24. Gerald's final argument is that the DSO does not contain a provision for enforcement via contempt proceedings. Suzanne does not dispute that this is a factor considered by the 11th Circuit, but notes that its significance on the question of classification of this DSO is minimal at best, because here the parties intended to give Suzanne a lien to secure the judgment which was understood as adequate protection. Thus, the parties reasonably believed that the provision of a lien would preclude the need for further judicial involvement. Of course, what Suzanne never envisioned at the time of the DSO was that

her ex-husband would ultimately, through various transactions involving Gerald, convey the property that was agreed to be the security for the judgment, thus depriving her of the lien that was the single most important aspect of the entire DSO.[3]

WHEREFORE, Suzanne requests that the Trustee's Motion be Granted, and that the objections from the Debtor and his brother Gerald be overruled.

                                                 *s/ Christopher Smith*
                                                 Christopher D. Smith, Esq.   FBN 0605433
                                                 *Attorney for Suzanne Throgmartin*
                                                 Christopher D. Smith, P.A.
                                                 5391 Lakewood Ranch Blvd N STE 203
                                                 Sarasota, FL 34240
                                                 P: 941-907-4774   F: 941-907-3040
                                                 smith@ChrisSmith.com

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT a true and correct copy of the foregoing Response was furnished on November 30, 2011, by U.S. Mail and/or electronic mail via CM/ECF pursuant to Local Rule 7005-3 to:

                                               *s/ Christopher D. Smith*
                                                 Christopher Smith, Esq.
                                                 FBN 0605433

Richard A. Johnston, Jr
Fowler, White, Boggs, P.A.
Post Office Box 1567
Fort Myers, FL 33902-1567

MICHAEL P. HORAN
LARA R. FERNANDEZ

---

[3] See the Trustee's adversary complaint against Gerald for more details regarding these allegations.

TRENAM, KEMKER, SCHARF, BARKIN,
FRYE, O'NEILL & MULLIS, P.A.
Suite 2700, Bank of America Plaza
101 East Kennedy Boulevard
Tampa, Florida 33602

Mark R. Wenzel
KRIEG DEVAULT LLP
One Indiana Square, Suite 2800
Indianapolis, Indiana 46204-2079

Robert E. Tardif, Trustee
Robert E. Tardif, Jr., P.A.
Post Office Box 2140
Fort Myers, FL 33902

Robert F. Elgidely, Attorney for Trustee
Genovese Joblove & Battista, P.A.
Bank of America Tower - 44th Floor
100 Southeast Second Street
Miami, FL 33131

Don Throgmartin, LLC
1533 Hendry Street, 1st Floor
Ft. Myers, FL 33901

United States Trustee - FTM7
Timberlake Annex, Suite 1200
501 E Polk Street
Tampa, FL 33602