IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

IN RE:                        :
                              :
R. DON THROGMARTIN            :    Case No. 9:09-bk-28555-BSS
                              :
        Debtor                :    Chapter 7
------------------------------:
                              :
ROBERT E. TARDIF              :    Adv. No. 9:11-ap-01140-BSS
CHAPTER 7 TRUSTEE             :
                              :
        VS.                   :
                              :
W. GERALD THROGMARTIN         :
------------------------------:
                                   U.S. Courthouse
                                   2110 First Street
                                   Fort Myers, Florida 33901
                                   Held December 6, 2011

TRANSCRIPT OF HEARING
[Re: 09-bk-28555] 1-Debtor's Objection to Claim 6-1 of Baker
& Daniels, LLP (Doc. #81); 2-Debtor's Objection to Claim 2-1
 of Suzanne Throgmartin (Doc. #79); 3-Debtor's Objection to
Claim 8-1 of Indiana Dept. of Environmental Management (Doc.
 #82); 4-Debtor's Objection to Claim 5-1 of Tippman & Dumas,
    LLC (Doc. #80); 5-Trustee's Motion to Strike Debtor's
   Objections to Claims for Lack of Standing (Doc. #95); 6-
Trustee's Motion to Determine that Claim No. 2-1 of Suzanne
   Throgmartin is a Claim for a Domestic Support Obligation
 (Doc. #99); Response by W. Gerald Throgmartin (Doc. #103);
  Response by Suzanne Throgmartin (Doc. #105); [Re: 11-ap-
01140] 1-Pretrial Conference; 2-Plaintiff's Motion to Strike
   Defendant's Second, Fourth Through Eighth, and Tenth
    Affirmative Defenses (Doc. #7); 3-Defendant's Motion to
    Strike Plaintiff's Demand for Jury Trial (Doc. #9)

BEFORE THE HONORABLE BARRY S. SCHERMER
UNITED STATES BANKRUPTCY JUDGE

_____

*PROCEEDINGS DIGITALLY RECORDED BY COURT PERSONNEL.*
*TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE*
*APPROVED BY ADMINISTRATIVE OFFICE OF U.S. COURTS.*

A P P E A R A N C E S

For the Debtor                  RICHARD JOHNSTON, JR., Esquire
                                Fowler White Boggs, P.A.
                                P. O. Box 1567
                                Ft. Myers, Florida 33902-1567
                                239-334-7892
                                richard.johnston@fowlerwhite.com


For W. Gerald Throgmartin       LARA ROESKE FERNANDEZ, Esquire
                                Trenam Kemker
                                P.O. Box 1102
                                Tampa, Florida 33601-1102
                                813-223-7474
                                lrfernandez@trenam.com

                                MICHAEL P. HORAN, Esquire
                                Trenam Kemker
                                200 Central Avenue
                                Suite 1600
                                St. Petersburg, FL 33701
                                727-824-6201
                                mhoran@trenam.com


For the Ch. 7 Trustee,          ROBERT F. ELGIDELY, Esquire
Robert E. Tardif, Jr.           Genovese Joblove & Battista PA
                                Bank of America Tower
                                44th Floor
                                100 Southeast Second Street
                                Miami, Florida 33131
                                305-349-2300
                                relgidely@gjb-law.com

A P P E A R A N C E S


For the U.S. Trustee          J. STEVEN WILKES, Esquire
(by video)                    Office of United States Trustee
                              501 East Polk Street
                              Tampa, FL 33602
                              813-228-2000
                              j.steven.wilkes@usdog.gov


For Suzanne Throgmartin       CHRISTOPHER SMITH, Esquire
                              Goldstein Buckley Cechman
                              Rice & Purtz
                              P.O. Box 2366
                              Ft. Myers, Florida 33902-2366
                              239-334-1146 x-9481
                              csmith@gbclaw.com


Also Present                  Robert E. Tardif, Jr.
                              Chapter 7 Trustee

```
 1                    P R O C E E D I N G S
 2           (Proceedings commenced at 4:25 p.m.)
 3           THE COURT:  Let's get the Throgmartin people back
 4  up here and -- R. Don Throgmartin, this is the Debtor's
 5  objection to Claim No. 6 of Baker & Daniels.
 6           MR. JOHNSTON:  Overrule, Judge, all those on the
 7  Debtor's except for No. 2, please.
 8           THE COURT:  Well, I'll just take them one at a
 9  time, if I may.
10           MR. JOHNSTON:  Okay, fine.
11           THE COURT:  On No. 1 -- I'm sorry.  Mr. Johnston,
12  you represent whom?
13           MR. JOHNSTON:  The Debtor.
14           THE COURT:  Okay.  And what is your position on
15  this?  Do you want me to overrule your --
16           MR. JOHNSTON:  They're incomplete -- several of
17  them are incomplete.  They're the goofiest objections I've
18  ever filed in my life.
19           THE COURT:  Okay.  I thought somebody got tired of
20  typing or something.
21           MR. JOHNSTON:  I think the button got pressed
22  before the typing was finished.
23           THE COURT:  Okay.
24           MR. JOHNSON:  That's on, I think, three of the --
25  three of the four I filed.
```

1          THE COURT:  Yes.  Debtor's objection to Claim

2   No. 2 of Suzanne Throgmartin.

3          MR. JOHNSTON:  That's active and that has

4   substance.

5          THE COURT:  All right.  This is the allegation

6   that this is not -- that the claim is not a DSO.  Let's

7   couple that with the Trustee's motion to determine that

8   Claim No. 2 of Suzanne's Throgmartin is a claim for DSO,

9   Document 99.  Who represents Suzanne?

10          MR. SMITH:  Good afternoon, Your Honor.

11   Christopher Smith on behalf of Creditor, Suzanne

12   Throgmartin.

13          THE COURT:  Thank you.  I use first names only

14   because there are a lot of Throgmartins and it's easier for

15   me to do that.

16          MR. TARDIF:  Just for appearance purposes, Bob

17   Tardif, Trustee.  And I also filed the motion to determine,

18   of course, so -- Judge, the request to have the Court

19   determine this was to avoid the circumstance of me

20   collecting x-amount of dollars in this estate and then

21   having the objection, obviously by the Debtor -- even though

22   I don't believe he necessarily has standing -- but objecting

23   to my final report when that finally comes out and adding

24   months and months of -- and so to me, when I looked at it,

25   it appeared that it fit several of the definitions cited in

1  Mr. Smith's memorandum in terms of being --

2          THE COURT:  Let's pause for a minute.  Do you have

3  any objection to taking this up early in the case as opposed

4  to the back end?

5          MR. JOHNSTON:  Not at all, Judge.

6          THE COURT:  Okay.

7          MR. TARDIF:  When I looked at it, Judge, it had

8  some of the hallmarks of being a DSO, and therefore it would

9  have certain priority in distribution.  And, of course, Mr.

10  Throgmartin, the Debtor's, objection to that claim,

11  basically accelerated, you know, the issue as well.

12          So, you know, to the extent that Mr. Smith,

13  obviously representing Ms. Suzanne Throgmartin, I don't know

14  if anybody's going to ask for an evidentiary hearing, but

15  that's the purpose.  If somebody's going to ask for one,

16  I wanted it all out there so the Court can conclude it and

17  have a distribution that's clean and not have an objection

18  at the end.

19          THE COURT:  Thank you.  Let me ask my two

20  interested parties up here, the Debtor and Suzanne's

21  attorney, do you want to put on your evidence today or do

22  you want a different hearing date?

23          MR. JOHNSTON:  I think if I -- subject to being

24  corrected by Mr. Smith, I think there's only one piece of

25  evidence and that's the joint property settlement agreement.

1          THE COURT:  Right.

2          MR. JOHNSTON:  That's it.

3          MR. SMITH:  I would --

4          MR. JOHNSTON:  And so --

5          MR. SMITH:  I would agree, Your Honor, plus

6    there's a practical limitation.  I don't think we're going

7    to be able to get the parties back here to talk about the

8    agreement from 13 years ago.

9          For instance, Your Honor, my client is now

10   incapacitated.  She would not be in a position to be able

11   to offer any new testimony about what was agreed 13 years

12   ago.

13         THE COURT:  So let me make a few comments before

14   we start duking this out.  No amount of, quote, alimony or

15   maintenance was identified in that document.  Observation

16   number two, that doesn't preclude the award from being a DSO

17   or a support obligation, or in the nature of support.

18         I don't -- I'm not as familiar with your Eleventh

19   Circuit authority, but I believe it goes to the issue --

20   and there are trial level decisions that give a number of

21   factors you can look at.  But at the end of the day, we're

22   looking at the function or purpose that the award was

23   intended to deliver.  With that in mind, then, we'll start

24   with Mr. Johnston.

25         MR. JOHNSTON:  And I haven't briefed the issue,

1    Judge, and it was only -- I had a bare objection, so I would

2    like the opportunity to provide law.  But if I look at the

3    joint property settlement agreement, first of all, it's a

4    property settlement agreement.  I understand that the label

5    is not enough, in and of itself.

6         But if you turn then to paragraph 5, or Section 5,

7    that's the first thing I think you should look at.  And it

8    says that -- it's defining the wife's property.  And it

9    says, "The wife shall have as her own, free and clear from

10   any further interest of the husband, the following

11   property."

12        And then if you skip down, there are a number

13   of small roman numerals.  And if you look at item four,

14   "A marital property distribution judgment lien in the sum of

15   $7,490,000 payable without interest, as hereinafter set

16   forth."  Again, it's referred to in that as a property

17   distribution, not alimony, not support, not maintenance.

18        If you then go to the debts and obligations

19   section, which is Section 7 on page 5 -- Section 7(c) -- it

20   says, "That the parties agree that the husband" -- that

21   would be my client, the Debtor -- "shall liquidate the

22   marital property distribution lien as set forth in paragraph

23   5(a)(iv) in the following manner."  And then it sets forth

24   in subparagraph (i) the payments that are going to be made

25   monthly of $31,000 per month.

1          So that is simply a payment of a property

2     distribution over a 20-year term.  And it spells it out in

3     the -- I'm not reading the entire paragraph.  You can -- the

4     Court can certainly read that.  But it says, "The sum shall

5     be paid monthly for her lifetime or 20 years certain,

6     whichever last occurs."

7          So I guess that it may be forever, and the problem

8     is we ran out of money before we ran out of lifetime.  It

9     does not say it's for the support; it is to distribute

10    property of the parties.

11         And although I don't have the case law with me

12    today, I'd be happy to brief it.  It may be a matter of

13    Indiana law, not Florida law, because -- and there is --

14    but from a general understanding of whether or not this is

15    support, alimony, or maintenance.  It is not.  It is a

16    distribution.

17         THE COURT:  Mr. Johnston, should we read the

18    document in the following -- or through the following

19    filter?  Here, here, don't -- you don't need to flip.

20         MR. JOHNSTON:  Sorry, gotcha.

21         THE COURT:  There you go.  Should we read the

22    document through this filter or not?  She was -- the

23    marriage was of some duration, I think 30 years or so?

24         MR. JOHNSTON:  It was long, I know that.  I don't

25    know exactly.

1          THE COURT:  Okay.  It was a long marriage.

2          MR. JOHNSTON:  Sure.

3          THE COURT:  She did not work outside of the house;

4    correct?  Or are you --

5          MR. JOHNSTON:  That was my understanding.  That's

6    true.

7          THE COURT:  And lastly, during the marriage, he

8    was the sole wage earner and he was a man of some substance.

9          MR. JOHNSTON:  I would agree.

10         THE COURT:  How do I read this so that -- okay,

11   so your position is there was no maintenance, it was only

12   support -- it was only an allocation of property?

13         MR. JOHNSTON:  And I don't know -- again, I'm in

14   the same boat here that I can only go on the intention of

15   the parties by what's in this document.  It doesn't say

16   that that was in lieu of alimony.

17         I've seen those.  I've litigated, in fact, marital

18   settlement agreements where it says, "This distribution is

19   in lieu of alimony."  I have a much harder time if I say

20   that, you know.  But whatever the reasoning that the

21   parties, through their counsel, decided, they set this up

22   in this fashion that there would be a property distribution.

23         Perhaps she got more this way than she would have

24   gotten in alimony, I don't know.  Thankfully, I'm not a

25   family law lawyer and not practicing in Indiana.

1          THE COURT:  Thank you.  Mr. Smith?

2          MR. SMITH:  Your Honor, thank you.  There's three

3    points I want to make about this, Your Honor, but first I

4    would note that there -- we're fortunate that there is an

5    abundance of case law in this matter.  This issue comes up a

6    lot in all of the circuits.  And my personal --

7          THE COURT:  Well, it used to.  Now, it only comes

8    up in Chapter 13 cases because of the 2005 amendments to

9    (a)(15).

10          MR. SMITH:  That's true, Your Honor, because it

11   treats the property settlement different in terms of

12   dischargeability.

13          THE COURT:  So, thankfully, we don't see this

14   often.

15          MR. SMITH:  But we have guidance on this, Your

16   Honor, and I think one of the reasons we see it a lot, at

17   least in the old days, was because of the disparate tax

18   treatment between whether it's a property settlement versus

19   an award of support.

20          Because of that, there is a lot of guidance.

21   I know Judge Baynes and Judge Paskay have written

22   extensively about this.  There are numerous cases out there

23   about that.  I did cite to an opinion by Judge Baynes which

24   is widely followed.  But I also cited the Eleventh Circuit

25   decision, Your Honor, the Cummings case, and it gives very

1   clear guidance on what we're supposed to look at.

2           But before I -- if I may, Your Honor, just very

3   briefly, before I get into that analysis, I need to point

4   out that this is really truly one of the tragedies of this

5   entire bankruptcy case that was filed by the Debtor, in that

6   my client never should have been an unsecured creditor from

7   the very beginning.  The --

8           THE COURT:  Well, I think that there was a failure

9   to record her interest --

10          MR. SMITH:  That's --

11          THE COURT: -- her lien interest in the real

12  estate, and that was quite detrimental.

13          MR. SMITH:  It was, Your Honor.  And the important

14  point to note there, is that the real estate -- the reason

15  there was never a lien recorded is because the Debtor, with

16  respect to one of the properties, sold it to his brother,

17  and with respect to the other property, he sold --

18          THE COURT:  Ms. Fernandez is already angry with

19  me; let's not go over there.

20          MR. SMITH:  I'll move on, Your Honor.  I know

21  that's an issue, really, for the Trustee's counsel and

22  they're delving into that.

23          But with respect to the substantive issues of this

24  marital settlement agreement, I don't believe the Court

25  needs to look any further than two points.  And if we just

1   look at, with respect to the agreement, Your Honor, page 5,

2   it's paragraph 7(c).  This is the meat of the agreement.

3   This is the $7-1/2 million judgment, and it spells out how

4   the money is to be distributed.  It says $31,000 for 20

5   years or life, whichever is longer.

6          So, Your Honor, if this was truly just a

7   distribution of property, why would we have a provision in

8   this agreement that says that she gets money in year 21,

9   year 30, year 40.  The actual nominal stated judgment amount

10  of 7-1/2 million is somewhat of a fiction; it's really just

11  a floor.  She could get 15 million; she could get 10 million

12  if she lives 30 years.  That is what is akin to alimony.

13  This is designed as a support payment.

14          And in furtherance of that, Your Honor, the second

15  point I'll make is the -- further in that paragraph, it

16  deals with the tax netting provision.  The agreement

17  actually says that if she lives beyond 20 years and, for

18  whatever reason, if those payments are determined to be

19  taxable income, the obligor of this agreement, the Debtor,

20  has to net up his payments to her so it will increase from

21  31,000 up to whatever the number is so that she gets the

22  exact same amount every month.

23          That is not something that would be consistent

24  with a property settlement; that is something consistent

25  with alimony or income.  So I think those are really the two

1   main points.

2          But, Your Honor, with respect to the Cummings

3   decision and Judge Baynes' and Judge Paskay's decision,

4   you've already alluded to some of the important facts.  This

5   was a 37-year marriage.  There were no minor children at the

6   time of the divorce, so there was no need for any separate

7   child support.  There is no separate award of alimony.  And

8   that's a very key distinction, and I know that the decisions

9   really hit on that.

10          There was an enormous imbalance of income and

11   earning potential between the parties.  These were obviously

12   installment payments over a long period of time.  And

13   further, Your Honor, they represent the vast majority of the

14   income of the claimant.  And these were all important

15   distinctions in the Cummings decision.

16          So, Your Honor, I think it's important that we

17   really see this agreement for what it is.  It's really just

18   a glorified alimony, set up as possibly for tax purposes to

19   -- they call it a property settlement agreement, but we need

20   to look beyond that.

21          THE COURT:  Thank you, gentlemen.  Let me take

22   this matter under --

23          MR. JOHNSTON:  Just one -- a couple of brief

24   rejoinders, I'm sorry.

25          THE COURT:  Mr. Johnston?

1         MR. JOHNSTON:  Thank you, Judge.  I agree that

2    7(c) is the heart of it, and I think you should look

3    first -- before you look at the last sentence, look at the

4    ones preceding.  And I think they used the term "income" in

5    lieu of "alimony."  And it says in the first paragraph, the

6    first part of the paragraph, that this is her share of the

7    marital property distribution and not as income.

8         And I would agree after 20 years, if she lives

9    that long and continues, then it is income.  This is a 1998

10   agreement; we didn't get to 20 years.

11        MR. SMITH:  She's still alive, though, Your Honor.

12        MR. JOHNSTON:  I understand, but we're no longer

13   paying it, so it doesn't vest then, if that's the case and

14   that's your argument.  There's no evidence of record that

15   this was all of his income.  In fact, it wasn't.

16        And also, the mortgage that was not recorded was

17   due to the fault of the wife's counsel.  It was provided

18   by my client.  We don't have evidence now.  That's what I

19   believe the evidence would prove, that there was a document

20   executed or ready.  They never followed through.  And so,

21   yes, it would have been a good thing to do, but her lawyer

22   decided not to do it, for whatever reason.

23        THE COURT:  Thank you.  Let me hear from

24   Ms. Fernandez, please.

25        MS. FERNANDEZ:  Your Honor, I just wanted to

1   interpose that Gerald Throgmartin did file a limited

2   objection to Ms. Suzy Throgmartin's claim.  And essentially

3   I'm not a -- I would say that the Eleventh Circuit might not

4   be the circuit that you should be looking at and, instead,

5   it should be the Seventh Circuit and Indiana law on how it

6   interprets or guides the Bankruptcy Court on determining

7   whether or not this is a domestic support obligation.

8           THE COURT:  Thank you.  Let me take the matter

9   under submission and give you an opinion.

10          MR. JOHNSTON:  Do you want any briefing, Judge.

11  I have not given you any law at all.

12          THE COURT:  No, I think we're going to end up

13  looking at the same circuit decisions, either eleven or

14  seven.  Thank you.

15          MR. JOHNSTON:  Okay, thank you.

16          THE COURT:  Now, let me call the other three

17  matters.  The Debtor's objection to Claim No. 8, Indiana

18  Department of Environmental Management, the claim is

19  overruled without prejudice.

20          Debtor's objection to Claim No. 5, Tippman &

21  Dumas, overruled without prejudice.  And then I have

22  Trustee's motion to strike Debtor's objection to claims

23  for lack of standing.  Well --

24          MR. JOHNSTON:  I have a case on that, at least as

25  to two.  It's, In re Khan -- K-h-a-n.  I don't have a cite

1    because it has not yet been reported; it's too new.   It

2    is -- or Khan v. Region's Bank.  It is a September 29th,

3    2011 decision out of the Bankruptcy Court from the Eastern

4    District of Tennessee.  It is Case No. 10-36155 and

5    Adversary Proceeding 11-3186.

6            I believe the holding is, generally a Debtor does

7    not have standing in a Chapter 7 case to object to a claim

8    unless there are sufficient assets to pay all creditors and

9    administrative expenses in full, or the underlying debt is

10   nondischargeable.

11           It is potentially, the latter, at least as to

12   Claim 2 that I have standing.  I would agree on the others

13   I don't have standing, or at least not at this point.

14           THE COURT:  Well, it's really a moot issue right

15   now, isn't it?  Because I don't have any Trustee objections

16   pending.

17           MR. TARDIF:  I mean, I was going to actually

18   ask -- actually ask the Court if we -- in light of my motion

19   to determine whether it's a DSO, to deny his as moot, just

20   because the Court's obviously going to make a decision on

21   that.

22           THE COURT:  Well, I'm not sure it has anything to

23   do with -- I just don't think there are any trust -- there

24   are any Don objections right now.  Is that correct?

25           MR. JOHNSTON:  Other than to Claim 2 of Suzanne.

1    You've denied all the three that were not --

2           THE COURT:  Pardon me, you are correct.  So

3    this --

4           MR. JOHNSTON:  And so that one is potentially

5    nondischargeable under (a)(15) or (a)(5).

6           THE COURT:  What is your response?

7           MR. TARDIF:  Judge, I --

8           THE COURT:  This isn't going to be a surplus

9    case, apparently, so the question is under a 5 -- under a

10   potential 523, does the Debtor have standing, a pecuniary

11   interest?

12          MR. TARDIF:  Well, he has an interest based upon

13   the nondischargeability issue; not any surplus because this

14   is not going to be a surplus case.

15          THE COURT:  Right.

16          MR. TARDIF:  My thought is just it could be

17   wrapped into the Court's opinion.  I mean, you indicated you

18   are going to consider the arguments that were just heard so

19   it's --

20          THE COURT:  I don't see any harm in allowing the

21   Debtor, under these circumstances, to object to claims.

22   It's something to be heard.

23          MR. TARDIF:  Okay.

24          THE COURT:  Mr. Johnston is a pleasant person.

25          MR. TARDIF:  I don't want to get over-technical

1   with the Court, but can we just limit it to Claim --

2            MR. JOHNSTON:  2.

3            MR. TARDIF:  To this claim, not "claims."

4            THE COURT:  Well, I'm limiting it to Suzanne right

5   now.

6            MR. TARDIF:  Okay.

7            THE COURT:  You can raise it later if you want to.

8            MR. JOHNSTON:  Do you want me to prepare orders

9   overruling on those three others, Judge?

10            THE COURT:  If you would, please.

11            MR. JOHNSTON:  I will.

12            THE COURT:  Thank you.  Thank you all.  Anything

13   further, Mr. Johnston?

14            MR. JOHNSTON:  No, Your Honor.  Thank you.

15            THE COURT:  Thank you.  Okay, then let's move to

16   the adversary proceeding.  I have a pretrial conference on

17   the adversary, and I also have a Plaintiff's motion to

18   strike Defendant's Second, Fourth through Eighth, and Tenth

19   Defenses.

20            Well, this adversary is getting off to a rocky

21   start, isn't it?

22            MR. ELGIDELY:  Unfortunately, Your Honor.

23            THE COURT:  Appearances, please.

24            MR. ELGIDELY:  Your Honor, Robert Elgidely of

25   Genovese, Joblove & Battista on behalf of the Trustee.

1            MR. HORAN:  And, Your Honor, Mike Horan for Gerald

2     Throgmartin, the Defendant.

3            THE COURT:  Can I just ask for a minute to look

4     over my notes?

5            (Brief pause.)

6            THE COURT:  Well, we can deal with the easy one

7     first, the Second Defense.  It lacks jurisdiction to hear,

8     no?  Stern v. Marshall isn't a jurisdictional case.

9            MR. HORAN:  Well, Your Honor, if the word should

10    be -- the term should be "constitutional authority" or

11    "judicial power," fair enough.  But, Your Honor, this is

12    something that was discussed with Mr. Elgidely at the Rule

13    26(f) conference we had by -- telephonically.  And really

14    what we're focusing on it just the Sixth -- Counts VI, VII,

15    and VIII, which are all causes of action based on state law.

16            And certainly Stern v. Marshall has questioned

17    this Court's authority, respectfully -- all Bankruptcy

18    Courts' authority to enter final orders on matters and

19    causes of action based on state law.  VI, VII, and VIII are

20    -- VI is unjust enrichment, VII is equitable lien, VIII is

21    constructive trust.  And those last two --

22            THE COURT:  Okay.  And you're just putting me on

23    notice that the Defendant on those counts doesn't think --

24    does not think I have authority to enter a final order?

25            MR. HORAN:  Yes, Your Honor.

1          THE COURT:  That's fine.  If you want to interpret

2    Affirmative Defense Two that way, then it's fine with me,

3    and we don't care what he says, because that's a legitimate

4    issue.

5          MR. ELGIDELY:  It is, Your Honor.

6          THE COURT:  The entry of a final order is what

7    Sterns talks about.

8          MR. ELGIDELY:  It is, Your Honor.  Just one

9    clarification, though.  In the fraudulent transfer counts,

10   we did, like, a mass count that included the state law bases

11   for avoidance as well.

12          So I don't think we could say that they're limited

13   to VI -- Counts VI through VIII, because we've asserted

14   fraudulent transfer counts under state law.  And I believe

15   the first three claims -- and Judge Williamson recently in

16   his Safety Harbor opinion footnoted the fact that the state

17   law fraudulent transfer claims may be subject to a different

18   analysis as a result of Stern.

19          MR. HORAN:  Your Honor --

20          THE COURT:  That's fine.  I think we understand

21   what we're talking about, is the ability to enter a final

22   order on those that are not Title 11 causes of action.

23   I think we shorthand Stern by saying "jurisdiction" when we

24   really mean "final order."  We shorthand it by saying "state

25   law" when we really mean "non-Title 11 law."  So that's my

1   understanding of _Stern_ and we'll leave it at that.

2          MR. HORAN:  That's fine, Your Honor.

3          MR. ELGIDELY:  Your Honor, would you require

4   counsel to file an amended affirmative defense to clarify

5   that so it doesn't stand as a subject matter jurisdiction

6   defense at this point?

7          THE COURT:  Well, let's go through -- make a note

8   and we'll get through all of these, and we'll deal with all

9   of them at once.

10          MR. HORAN:  I would like to do whatever Your Honor

11   -- pleases Your Honor.  Whether we do an order coming out of

12   this pretrial conference or amended defenses, either way

13   would be fine, if we need to clarify anything.

14          THE COURT:  Sure.  I'm beginning to think we ought

15   to document everything we do because -- okay, let's look at

16   Four through Eight.  Mr. Elgidely, do you want to lead me

17   through those?

18          MR. ELGIDELY:  Yes, Your Honor.  The Fourth

19   through Eighth Affirmative Defenses state barebones legal

20   defenses without any factual support whatsoever.  Those

21   defenses state that the transaction was a contemporaneous

22   exchange; that he gave value to --

23          THE COURT:  Yeah.  Well, I mean, it strikes me

24   that you have all of the 547(c) defenses at your disposable

25   -- at your disposal once a preference, if ever, is proven.

1          The way I teach 547 is that you're limited to only

2    the defenses in (c) plus the one which is earmarking, which

3    is common law defense.  So he's got those defenses whether

4    there are factual assertions or not.  To bring into play

5    547(c) defenses, that will be an evidentiary matter at trial

6    once the preference has been proven.

7          With respect to 548(c), I think the same is true.

8    So do we need to strike defenses at this point?  I mean,

9    I understand that technically you might be right, but we

10   both know what we're doing here, don't we?

11          MR. ELGIDELY:  We do, Your Honor, but as to the

12   other defenses -- and I agree as to those, the 547(c) and

13   the 548(c).

14          THE COURT:  Yes.

15          MR. ELGIDELY:  But as to the doctrines of res

16   judicata, collateral estoppel, although I know at this point

17   what the grounds are -- or I think I know -- because they're

18   not pled, I would like them to be pled so that we can,

19   you know, certainly take discovery and explore what the

20   allegation there is in that affirmative defense and what the

21   parameters of our discovery will be as to those defenses.

22          THE COURT:  Give me just a minute, please.

23          MR. ELGIDELY:  Yes, sir.

24          (Brief pause.)

25          THE COURT:  Okay.  Four, Five, Six do not mention

1   collateral estoppel or res judicata.  Eight -- Seven does,

2   so we're only talking about Seven.  And you want more

3   specificity; is that correct?

4           MR. ELGIDELY:  It is, Your Honor.

5           THE COURT:  Okay.  And what is the Defendant's

6   position on that?

7           MR. HORAN:  Well, Your Honor, let me explain

8   basically what Seven refers to.  It's also, for the most

9   part, referenced in Nine which is a waiver estoppel defense.

10          THE COURT:  Are we talking about Ms. Fernandez'

11  State Court judgments?

12          MR. HORAN:  Well, we are talking about to the

13  extent the foreclosure judgment in Indiana is relevant in

14  this case, yes.  I would --

15          THE COURT:  Sure.

16          MR. HORAN:  We are talking about it.  It's

17  arguably -- it's arguable whether they're seeking any relief

18  -- the Trustee is seeking any relief with respect to the

19  mortgages.

20          THE COURT:  Are there any other State Court

21  judgments other than the state -- Indiana state foreclosure

22  judgments?

23          MR. HORAN:  Yes, there's a judgment whereby a

24  Suzanne Throgmartin sued Gerald Martin (sic) --

25          THE COURT:  Sued Gerald, yes.

1          MR. HORAN:  Sued Gerald, excuse me, with respect

2     to the lack of her liens on various pieces of real estate in

3     Indiana owned by Gerald, including the so-called 20 acres

4     which are the subject of Counts VII and VIII.  And those

5     issues have been resolved.  As I understand it, Suzy and

6     Gerald agreed to a settlement --

7          THE COURT:  Whatever it is.  Could you list those

8     or refer to them with some degree of specificity so as to

9     put notice on the Plaintiff what you're relying upon?

10          MR. HORAN:  I'll be happy to.  In an amended

11    defense or in --

12          THE COURT:  Yes, sir.  I think an amended defense.

13          MR. HORAN:  On Number Seven, that'll be fine, Your

14    Honor.

15          THE COURT:  Yes, sir.  You can either refer to

16    the specific date of the order or anything that puts the

17    Plaintiff on the clue bus, as to what you're relying upon.

18          MR. HORAN:  Yes, sir.

19          THE COURT:  All right.  Now what about Number

20    Eight?

21          MR. HORAN:  Eight is -- Your Honor, statute of

22    limitation or laches relates only to Counts VII and VIII,

23    which seek to place an equitable lien or constructive trust

24    on property owned by Gerald, and property that has been

25    owned by Gerald since 1998.  And I think by simply pleading

1   statute of limitation or laches, that is sufficient to put

2   the Trustee on notice of our defense with respect to those

3   two counts.

4         I have a case on point from the Middle District

5   which basically says the Middle District law is that the

6   Defendant only needs to give fair notice of the defense.

7   And thus, for example, a statement that this claim is barred

8   by the statute of limitation gives fair notice of the

9   defense and meets Rule 8 pleading requirements.  That's

10  from Merriweather, 2009 WL 1514640.

11        If it's insufficient to Your Honor, I will do it

12  differently.  But I think for those two counts, considering

13  the property involved that's owned by Gerald since 1998,

14  that's sufficient notice.

15        THE COURT:  Thank you.

16        MR. ELGIDELY:  Based upon counsel giving me this

17  case today before the hearing, I withdraw the motion to

18  strike the Eighth Affirmative Defense, Your Honor.

19        THE COURT:  Then let's go to the last one, which

20  is Number Ten.  And what is the Plaintiff's position?

21        MR. ELGIDELY:  Your Honor, this is no defense at

22  all.  It doesn't admit the allegations of any claims and

23  does not set up the facts in avoidance of the claims.  It's

24  merely a reservation of rights in our --

25        THE COURT:  It's fine.  You know what, you learn

1   something you didn't know, that these are going to be relied

2   upon.

3          Dedra, Document No. 7, Plaintiff's motion to

4   strike, will be granted in part in that Affirmative Defense

5   Number Seven will be amended.  In all other respects the

6   motion is denied.  Do you understand what we're doing?

7          MR. HORAN:  Yes, Your Honor.  Ten days to amend

8   Number Seven after --

9          THE COURT:  Tell me whatever you need.  How

10   about 14?

11          MR. HORAN:  That's fine.

12          THE COURT:  I'm trying to get used to the

13   divisible by seven rule.

14          MR. HORAN:  Sure.

15          THE COURT:  Okay, 14 days to amend.  And I think

16   that that takes care of Don Throgmartin.

17          MR. ELGIDELY:  It does, Your Honor.

18          THE COURT:  Thank you.

19          MR. ELGIDELY:  Thank you for your time.

20          MR. HORAN:  Thank you.

21          THE COURTROOM DEPUTY:  Are we just resetting a

22   pretrial?

23          THE COURT:  Oh.  Well, I was hoping it would just

24   go away.  You all need discovery.  What, 60 days or 90 days

25   for another meeting?

1          MR. ELGIDELY:  Your Honor, to alert the Court --

2     and I'm sorry if I interrupted -- but we did have a Rule

3     26(f) conference and we agreed to all deadlines except we

4     had some initial disclosure deadlines that fell by the

5     wayside with what was happening in the LLC bankruptcy case.

6     But our discovery period, we agreed that it would expire

7     April 30th, 2012.

8          THE COURT:  That's what I meant, 120 days.

9          MR. HORAN:  Yeah.

10         THE COURT:  All right.

11         MR. HORAN:  Good enough.

12         THE COURT:  And when do you want this set for

13     trial?

14         MR. HORAN:  Set for trial?

15         THE COURT:  In May or --

16         MR. HORAN:  Probably after that, Your Honor.

17     We agreed to a deadline of June 29, a final deadline for

18     dispositive motions.

19         THE COURTROOM DEPUTY:  We have to set -- if he's

20     going to -- we have to try it before June, just in case.

21         THE COURT:  Oh, a subtle hint that I might not be

22     here after June.  I have confidence I will be but that's --

23         THE COURTROOM DEPUTY:  We could do it --

24         THE COURT:  Let's just do this.  We'll just have a

25     pretrial in May.  What is early in May?

1        THE COURTROOM DEPUTY:  May 9th, my birthday.

2        THE COURT:  May the 9th.

3        THE COURTROOM DEPUTY:  At 1:30.

4        THE COURT:  And we'll make this a birthday present

5    for our clerk.  And don't worry about the trial.  We'll get

6    you where you want to be.

7        MR. HORAN:  And, I'm sorry, Your Honor?

8        THE COURT:  May 9th for a pretrial.

9        THE COURTROOM DEPUTY:  1:30.

10        THE COURT:  1:30.

11        MR. HORAN:  Now, Your Honor, if motions for

12    summary judgment are filed by either side, might there be a

13    chance to have them heard before May 9th?

14        THE COURT:  Yes.  Whenever you want to file them,

15    go ahead.

16        MR. HORAN:  Very good.

17        THE COURT:  I'm trying to figure out how this

18    could not be factually controverted, but that's all right.

19    We'll figure this all out.  May the 9th I'll see you, if not

20    before.

21        MR. HORAN:  Yes --

22        THE COURTROOM DEPUTY:  And I'm sorry but there was

23    one more motion that was filed which was the Defendant's

24    motion to strike the demand for jury trial.

25        MR. HORAN:  That was not noticed for hearing

1    today.

2              MR. ELGIDELY:  It was not noticed for a hearing.

3              THE COURTROOM DEPUTY:  But it was a pretrial,

4    which means that all -- it says all pending motions will be

5    heard.

6              MR. ELGIDELY:  Your Honor, I'll be discussing with

7    the Trustee, as well as Mr. Horan, and there's a very good

8    possibility we'll withdraw the jury demand.  But I can't --

9    I need to consult with --

10             THE COURT:  I'll continue that.  Then you'll have

11   to come back.  Can your local counsel handle that or --

12             MR. HORAN:  Oh, Your Honor, I'm local with

13   Ms. Fernandez.

14             THE COURT:  Oh, okay.

15             MR. HORAN:  And we're with Trenam Kemper in Tampa

16   and St. Petersburg, so --

17             THE COURT:  Pardon me.  I knew she was.  Okay,

18   then I'll see you in January for the jury trial -- unless

19   it's withdrawn prior to that.  You want to give us a date

20   and time for the jury trial motion, motion to strike?

21             THE COURTROOM DEPUTY:  January 11th at 1:30.

22             THE COURT:  January 11, 1:30.  Thank you,

23   gentlemen.

24             MR. ELGIDELY:  Thank you, Your Honor.

25             MR. HORAN:  Very good, thank you.

1            THE LAW CLERK:  Who's going to submit that order?

2            MR. ELGIDELY:  On the motion to strike, I'll

3    prepare the order, Your Honor.

4            THE LAW CLERK:  And then the other one?

5            MR. HORAN:  That's fine, I'll do it on the jury

6    trial.

7            THE COURTROOM DEPUTY:  Well, we can do that as

8    announced in open court.

9            MR. HORAN:  Okay, that's fine.

10           MR. ELGIDELY:  Thank you.

11           THE COURT:  Thank you.

12           (Proceedings concluded at 4:57 p.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E

I certify that the foregoing is the official verbatim transcript, prepared to the best degree possible from the digital audio recording and logs provided by the court.

I further certify that I am neither counsel for, nor related to, nor an employee of, any of the parties to the action in which this hearing was taken.

I further certify that I have no personal interest in the outcome of the action.

Dated this 15th day of December, 2011.

*Cheryl Culver*

Cheryl Culver, CCR, B-1281
Certified Court Reporter
State of Florida Notary Public

Administrative Office of U.S. Courts
Approved Transcriber